UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STEVE MURPHY, ) | CASE NO. 5:12 CV 2429 |
| ) | |
| Plaintiff, ) | JUDGE JOHN R. ADAMS |
| ) | |
| v. ) | |
| ) | MEMORANDUM OF OPINION |
| NORTHWESTERN ) | |
| SCHOOL DISTRICT, *et al.*, ) | |
| ) | |
| Defendants. ) | |

*Pro se* Plaintiff Steve Murphy filed this action under 42 U.S.C. §§ 1983, 1985, 1986, and 1988, 18 U.S.C §§ 241 and 3571 against thirty-three Defendants, including the City of Barberton, Barberton Police Officer Bob Lynn, Wayne County Court of Common Pleas Judge Raymond Liesy, Wayne County Court of Common Pleas Judge Mark Clark, and Wayne County Court of Common Pleas Judge William Rickett.  In the Complaint, Plaintiff alleges his children were improperly removed from his custody.  He seeks monetary damages and return of the children.

Judges Leisy, Clark, and Rickett filed a Motion to Dismiss Pursuant to Federal Civil Rules 12(b)(1) and 12(b)(6) on October 17, 2012.  (ECF No. 7.)  They assert three arguments in support of their Motion.  First, they contend that the claims against them are barred by the *Rooker-Feldman* doctrine.  Second, they assert they are entitled to absolute immunity from suits for damages.  Finally, they claim the Plaintiff failed to state a claim upon which relief can be granted against them.  They contend Plaintiff did not adequately identify a federal right which

they violated, and further failed to establish all of the elements of a cause of action under 42 U.S.C. § 1985.

The City of Barberton and Barberton Police Officer Bob Lynn also filed a Motion to Dismiss pursuant to Federal Civil Procedure Rule 12(b)(6). (ECF No. 13). In support of their Motion, they assert that Plaintiff's claims against the City are brought under a theory of *respondeat superior*, which is not a proper basis for liability. In addition, they assert Plaintiff failed to state a claim against Officer Lynn for use excessive force in removing Plaintiff from the hospital. Finally, they contend that Plaintiff failed to state a conspiracy claim under either 42 U.S.C. § 1983 or §1985.

For the reasons set forth below, the Motions to Dismiss are granted and the claims against Judge Leisy, Judge Clark, Judge Rickett, the City of Barberton, and Barberton Police Officer Lynn are dismissed.

### I. Background

Plaintiff claims that on November 15, 2009, Northwestern High School Principal Mike Burkholder came to his home and told him he would report Plaintiff to WCCS if he did not send his children to school. Plaintiff claims the children were home schooled and he was therefore not required to enroll them in the public school system. Later that same day, Superintendent Jeffrey Layton filed a complaint in Juvenile Court indicating the children were delinquent and truant from school. Plaintiff claims the prosecutor declined to pursue the action.

Layton approached WCCS Caseworker Tiffany Green in March 2011 about the truancy issue. She visited Plaintiff at his home accompanied by two sheriff's deputies. Plaintiff alleges she filed a complaint with Juvenile Court Prosecutor Michael Rickett asking that he request

removal of the children from the home and seek temporary custody of them.  Rickett declined to take action at that time indicating his belief that the matter could be resolved in another forum.  Plaintiff claims he pursued a civil action against WCCS and Ms. Green seeking compensation associated with defending the charges.

In September 2011, Plaintiff's wife Tammy walked to her mother's house where her brother Kevin Lenart took her to the Wooster Community Hospital emergency room.  While Tammy was receiving a CAT scan, Lenart informed nurse Erica Carver that Plaintiff had been abusing Tammy and the children for seventeen years, and that Plaintiff had attempted to choke the oldest child with a rope.  Carver reported the information to Dr. Fletcher who reported that Plaintiff had inappropriately touched the children.  Tammy was sent to the Barberton Community Hospital as a result of the report.

Four days later, Plaintiff learned Tammy was in the hospital in Barberton and went to the hospital to retrieve her.  He claims that Tammy wanted to leave with him but the nurses would not permit her to do so.  He contends that the police were called and Officer Lynn responded.  Plaintiff alleges that while nurses dragged Tammy down the hall to her room, Officer Lynn and two hospital security guards escorted Plaintiff from the building and locked the door behind him.  Plaintiff returned the following day to take Tammy home.  He alleges the nurses would not permit Tammy to leave until all of her paperwork was in order.  He claims they held her to try to convince Tammy to make a statement naming Plaintiff as her assailant.

Plaintiff alleges he was detained on September 22, 2011 by Deputies Henry, Chellis, Maxwell, Brumme, and Knopp.  He alleges Judge Liesy signed an order granting temporary custody of his children to WCCS.  Plaintiff indicates he was handcuffed and placed in the back

of the police cruiser.  Officers then searched his home and reported that they found many guns.  WCCS Case Worker Green then removed the children from the home pursuant to the court order.  When the children were in the custody of WCCS, the Plaintiff was released

A shelter hearing was conducted on September 23, 2011 before Judge Liesy.  The children were placed in the temporary care of Kenny and Jenny Murphy, who appear to be related to the Plaintiff.  Plaintiff telephoned the Murphys to speak with his children.  In the course of this telephone call, he read 18 U.S.C. §§ 241 and 242 to the Murphys and informed them that they could be put to death for kidnaping his children.  The Murphys considered this to be a threat and obtained a protection order from Magistrate Bauders.  It was served on Plaintiff on November 1, 2011 by Deputies Bobbitt, Ries, and Fletcher.  Plaintiff contends he has not been permitted to telephone his children after that incident.

Plaintiff alleges the Murphys reported several instances in which he violated the Protection Order.  He contends an incident which occurred on March 14, 2012 was initiated by Kenny Murphy.  A warrant was nevertheless issued for Plaintiff's arrest.

Plaintiff claims he went to West Virginia in April 2012 to take care of his critically ill grandfather.  He contends Magistrate Clark issued a warrant for his arrest for failing to appear in court on a 1993 case.  He contends Jody Schumacher was the prosecutor in the case.  Two weeks later Judge Rickett signed another warrant for Plaintiff's arrest.  He does not indicate why the warrants were issued.  He does indicate that his grandfather died in May 2012.  He states Kenny Murphy followed him to West Virginia to see "their grandfather."  He indicates he had been in West Virginia before Murphy arrived.  He states without explanation that "Kenny Murphy did cause a situation that caused [Plaintiff] to be charged with domestic battery, [and] breaking a

-4-

protection order." He contends the charges were dismissed but only after he spent four days in jail.

Another warrant was issued for Plaintiff's arrest in August 2012 by the Wayne County Child Support Enforcement Agency on charges of contempt of court. He contends Case worker Chuhi urged the court to issue the warrant to keep him from his children. He indicated Judge Kienzle is assigned to the case and Brad Harp is the prosecutor.

Based on these allegations, Plaintiff claims the Defendants violated his First, Second, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendment rights under 42 U.S.C. § 1983. He also includes conspiracy claims under 2 U.S.C. §§ 1985 and 1986, and 18 U.S.C. §§ 241 and 3571.

## II.     Standard of Review for Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(1) allows dismissal for "lack of jurisdiction over the subject matter" of claims asserted in the Complaint. Fed.R.Civ.P. 12(b)(1). Generally, Fed.R.Civ.P. 12(b)(1) motions fall into two categories: facial attacks and factual attacks. Fed.R.Civ.P. 12(b)(1); *United States v. Richie*, 15 F.3d 592, 598 (6th Cir.1994). A facial attack challenges the sufficiency of the pleading itself. In contrast, a factual attack challenges the factual existence of subject matter jurisdiction. *See Ohio Hosp. Ass'n v. Shalala*, 978 F.Supp. 735, 739 (N.D.Ohio.1997). The Defendants facially attack subject matter jurisdiction, and this Court therefore must accept the Plaintiff's material allegations in the Complaint as true. *Ritchie*, 15 F.3d at 598. The Plaintiff has the burden of proving subject matter jurisdiction in order to survive a motion to dismiss pursuant to Rule 12(b)(1). *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir.1996). Lack of subject matter jurisdiction is a non-waivable, fatal defect. *Von Dunser v. Aronoff*, 915 F.2d 1071, 1074 (6th Cir.1990).

The Sixth Circuit stated the standard for reviewing a motion to dismiss under Rule 12(b)(6) in *Assn. of Cleveland Fire Fighters v. Cleveland*, 502 F.3d 545 (6th Cir.2007) as follows:

> The Supreme Court has recently clarified the law with respect to what a plaintiff must plead in order to survive a Rule 12(b)(6) motion. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1964–65 (citations and quotation marks omitted). Additionally, the Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id*. (internal citation and quotation marks omitted). In so holding, the Court disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (recognizing "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), characterizing that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Twombly*, 550 U.S. at 563.

*Id*. at 548. Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotations omitted).

If an allegation is capable of more than one inference, this Court must construe it in the Plaintiff's favor. *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.1995) (citing *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir.1993)). This Court may not grant a Rule 12(b)(6) motion merely because it may not believe the Plaintiff's factual allegations. *Id*.

Although this is a liberal standard of review, the plaintiff still must do more than merely assert bare legal conclusions. *Id*. Specifically, the Complaint must contain "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988) (quotations and emphasis omitted).

### III. Analysis

#### A. Rooker Feldman

Judges Leisy, Clark and Rickett first assert that the Court is without jurisdiction to consider the claims asserted in this action. They claim Plaintiff asks this Court to reverse orders they issued against him in the state court and indicate this Court is without jurisdiction to conduct a review of those judgments. United States District Courts do not have jurisdiction over challenges to state court decisions even if those challenges allege that the state court's action was unconstitutional. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n. 16 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923). Federal appellate review of state court judgments can only occur in the United States Supreme Court, by appeal or by writ of certiorari. *Id.* Under this principle, generally referred to as the Rooker-Feldman Doctrine, a party losing his case in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based on the party's claim that the state judgment itself violates the his or her federal rights. *Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994). Federal jurisdiction cannot be invoked merely by couching the claims in terms of a civil rights action. *Lavrack v. City of Oak Park*, No. 98-1142, 1999 WL 801562 *2 (6th Cir. Sept. 28, 1999); *see Valenti v. Mitchell*, 962 F.2d 288, 296 (3d Cir.1992).

Rooker-Feldman is a doctrine with only limited application. In both the *Rooker* and *Feldman* cases the plaintiffs challenged the validity of state court decisions by filing suit in federal district court. In *Rooker*, the plaintiff asked the district court to render the state court judgment against him "null and void." *See Rooker*, 263 U.S. at 414-15. In *Feldman*, the plaintiffs filed suit against the actual state court that had rejected the plaintiffs' applications to practice law. *Feldman*, 460 U.S. at 478-79. In both cases the Supreme Court dismissed the suits for lack of subject-matter jurisdiction, reasoning that pursuant to 28 U.S.C. § 1257, only the Supreme Court, and not the lower federal courts, enjoys appellate jurisdiction over state court decisions. *See Rooker*, 263 U.S. at 414-15; *Feldman*, 460 U.S. at 478-79. Significantly, the *Feldman* Court reasoned that the plaintiffs could challenge the state rules themselves in federal court on constitutional grounds; such a challenge would not be asking the district court to exercise appellate authority over a state court, but normal preclusion rules would still apply. *Id*. at 487-88; *see Todd v. Weltman, Weinberg & Reis Co.*, 434 F.3d 432, 435-36 (6th Cir.2006). (discussing the Supreme Court's analysis in the *Rooker* and *Feldman* cases more extensively). The source of the plaintiffs' alleged injury, then, was dispositive in *Feldman*.

In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, the Supreme Court again reiterated that the Rooker-Feldman doctrine applied only to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. Rooker-Feldman does not replace preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions. *Exxon Mobil*, 544 U.S. at 284.

Similarly, the Rooker-Feldman doctrine does not stop a district court from exercising subject matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party ..., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id*.

Here, it is not clear whether Plaintiff is claiming he was injured by the state court judgments, whether he is seeking to relitigate matters already determined by the state courts, or whether he wishes to litigate issues which he believes were collateral to the state court judgments. Plaintiff does ask this Court to order his children to be returned to his custody. To grant this relief, the Court would have to reverse the decisions of the Wayne County Juvenile Court or issue decisions. The Court lacks jurisdiction to grant this type of relief.

**B. Judicial Immunity**

To the extent that Plaintiff is seeking an award of damages against the Judges, his claim for relief must be denied. Judicial officers are generally absolutely immune from civil suits for money damages. *Mireles v. Waco*, 502 U.S. 9, 9 (1991); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). This far-reaching protection is needed to ensure that the independent and impartial exercise of judgment is not impaired by the exposure of potential damages. *Barnes*, 105 F.3d at 1115. For this reason, absolute immunity is overcome only in two situations: (1) when the conduct alleged is not performed in the judge's judicial capacity; or (2) when the conduct alleged, although judicial in nature, is taken in complete absence of all jurisdiction. *Mireles*, 502 U.S. at 11-12; *Barnes*, 105 F.3d at 1116. Plaintiff alleges no facts to show that

either of these criteria has been met in this case.

The determination of whether an action is performed in the defendants' judicial capacity, depends on the "nature" and "function" of the act, not on the act itself. Mireles, 502 U.S. at 13; *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). Looking first to the "nature" of the act, the Court must determine whether it is a function generally performed by a judge. *Stump*, 435 U.S. at 362. This inquiry does not involve a rigid scrutiny of the particular act in question, but rather requires only an overall examination of the judge's alleged conduct in relation to general functions normally performed by judges. *Mireles,* 502 U.S. at 13. Second, an examination of the "function" of the act alleged requires the Court to assess whether the parties dealt with the judge in his or her judicial capacity.

Upon applying these principles, it is evident on the face of the pleading that Judges Leisy, Clark and Rickett were acting in their judicial capacities at all times that the conduct alleged in Plaintiff's Complaint occurred. The issuance of judicial orders pertaining to custody, child support, and the issuance of temporary restraining orders are all actions normally performed by common pleas court judges. Furthermore, Plaintiff dealt with the judges only while they were acting in their respective judicial capacities. Plaintiff cannot overcome the broad application of judicial immunity under this criteria.

Judicial immunity can also be defeated when the conduct alleged, although judicial in nature, is taken in complete absence of <u>all</u> jurisdiction. *Mireles*, 502 U.S. at 11-12; *Barnes*, 105 F.3d at 1116. (emphasis added.) When the immunity of the judge is at issue, the scope of the judge's jurisdiction is to be broadly construed. *Stump,* 435 U.S. at 356-57. A judge will be not deprived of immunity because the action he or she took was performed in error, done

maliciously, or was in excess of his or her authority. *Id.* Actions taken in complete absence of all jurisdiction are those acts which are clearly outside of the subject matter jurisdiction of the court over which the judge presides. *King v. Love*, 766 F.2d 962, 965 (6th Cir. 1985); *see Barnes*, 105 F.3d at 1122. Conversely, merely acting in excess of authority does not preclude immunity. *See Sevier v. Turner*, 742 F.2d 262, 271 (6th Cir. 1984).

In the present case, there are no allegations set forth in the Complaint which reasonably suggest that the Judges clearly acted outside of the subject matter jurisdiction of the courts over which they preside. Judge Leisy presides over the Wayne County Juvenile Division have jurisdiction to hear all matters involving child custody, visitation, child support, and issues concerning shelter care. OHIO REV. CODE § 2151.32. Judges Clark and Rickett preside over the Wayne County Court of Common Pleas. They have jurisdiction to issue arrest warrants pursuant to OHIO REV. CODE § 1901.02-1901.20. While the Plaintiff alleges these Defendants exceeded their authority under Ohio law by issuing orders unfavorable to him, they were acting within the parameters of the subject matter jurisdiction of the courts over which they preside. Judges Leisy, Clark and Rickett are therefore entitled to absolute immunity from monetary damages in this matter.

### C. Conspiracy Claims

Finally, Judges Leisy, Clark, and Rickett, and the City of Barberton, and Officer Lynn assert that Plaintiff failed to state a claim for conspiracy. Plaintiff does not specify whether he is asserting his conspiracy claim against the Defendants under 42 U.S.C. § 1983 or under 42 U.S.C. §1985. The Court therefore will address both potential claims.

**1. Conspiracy Claims under 42 U.S.C. § 1983**

-11-

To sustain a § 1983 claim, Plaintiff must establish that he was deprived of a right secured by the Constitution or laws of the United States, and that this deprivation was caused by a person acting under the color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Generally to be considered to have acted "under color of state law," the person must be a state or local government official or employee. A key element to bring a conspiracy under §1983 is the active participation of a state actor in the conspiracy. *Memphis, Tennessee Area Local, American Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905-06 (6th Cir. 2004).

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir.2007); *Hooks v. Hooks*, 771 F.2d 935 (6th Cir.1985). To prevail on a §1983 conspiracy claim, Plaintiff must show that (1) a "single plan" existed, (2) these Defendant "shared in the general conspiratorial objective" to deprive Plaintiff of his constitutional rights, and (3) "an overt act was committed in furtherance of the conspiracy that caused injury" to the Plaintiff. *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). It is not necessary for Plaintiff to establish an express agreement among all the conspirators to find the existence of a civil conspiracy, nor does he have to demonstrate that each conspirator knew all of the details of the illegal plan or all of the participants involved. *Id*. Conspiracy claims, however, must be pled with some degree of specificity and vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983. *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.1987). A plaintiff must make sufficient factual allegations to link two alleged conspirators in the conspiracy and to establish the requisite "meeting of the minds" essential to the existence of the conspiracy. *McDowell v. Jones,* 990 F.2d

433, 434 (8th Cir.1993).

In this case, Plaintiff's Complaint does not contain the requisite degree of specificity needed to sustain a § 1983 conspiracy claim. First, it is difficult to tell which of Plaintiff's constitutional rights he believes these Defendant conspired to violate. The events described in the Complaint, while sequential, appear in large part to be unrelated. Merely being a participant in litigation does not make a parties a co-conspirators with the state. *Dennis v. Sparks*, 449 U.S. 24, 28 (1980). The allegations of a conspiracy in the Complaint are stated solely as legal conclusions with no facts to suggest a "meeting of the minds" between any of the Defendants. Plaintiff failed to establish any of the key elements to state a claim for conspiracy.

**2. Conspiracy Claims under 42 U.S.C. § 1985**

To state a claim for conspiracy pursuant to 42 U.S.C. § 1985, Plaintiff must allege: (1) a conspiracy of two or more persons; (2) with the purpose to deprive, directly or indirectly, a person or class of persons of equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) which causes injury to the person or property of plaintiff or deprivation of any right or privilege of a citizen of the United States. *Vakilian v. Shaw,* 335 F.3d 509, 518 (6th Cir.2003) (citing *United Bhd. of Carpenters & Joiners of Am. v. Scott,* 463 U.S. 825, 828-29 (1983)). The acts that allegedly "deprived the plaintiff of equal protection must be the result of class-based discrimination." *Id.* (citing *Newell v. Brown,* 981 F.2d 880, 886 (6th Cir.1992)). These types of conspiracy claims must also be pled with specificity and cannot be stated with conclusions and opinions. *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987).

Again, Plaintiff provides no factual allegations to suggest these Defendants conspired together and does not allege they engaged in class-based discrimination. Plaintiff does not allege

-13-

with specificity any overt acts in the conspiracy and does not include facts which reasonably suggest these Defendants had a "meeting of the minds" to engage in class based discrimination against the Plaintiff. Absent allegations of discrimination, Plaintiff fails to state a claim for relief under 42 U.S.C. § 1985.

### D.  *Respondeat Superior*

The City of Barberton also filed a Motion to Dismiss for failure to state a claim. (ECF No. 13). The City contends the claims against it are based solely on *respondeat superior* which cannot be the basis for a claim under 42 U.S.C. § 1983. As a rule, local governments may not be sued under 42 U.S.C. § 1983 for an injury inflicted solely by employees or agents under a *respondeat superior* theory of liability. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691(1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. A municipality can therefore be held liable when it unconstitutionally "implements or executes a policy statement, ordinance, regulation, or decision officially adopted by that body's officers." *Id.* at 690; *DePiero v. City of Macedonia*, 180 F.3d 770, 786 (6th Cir. 1999). Plaintiff does not base his claim against the City on any of its customs or policies. Instead, the City appears to be included as a Defendant simply because it employs individuals the Plaintiff believes violated his rights. The City of Barberton cannot be held liable for the actions of its employees in a § 1983 action.

### D.  Excessive Force

Finally, Officer Lynn claims Plaintiff did not allege facts to support a claim upon which

-14-

relief could be granted against him. Plaintiff's only allegation against him in the Complaint is that he escorted Plaintiff from the Barberton Hospital when Plaintiff tried to remove his wife from the hospital after she reported Plaintiff had been physically abusive toward her. The right to be free from excessive force in the course of an arrest is clearly established under the Fourth Amendment and can thus form a legitimate basis for a § 1983 claim. *See e.g.*, *Kain v. Nesbitt*, 156 F.3d 669, 673 (6th Cir.1998), *Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir.1993), and *Holt v. Artis*, 843 F.2d 242, 246 (6th Cir.1988). "Every push and shove an officer makes during the arrest" however, will not subject the officer to liability. *Collins v. Nagle*, 892 F.2d 489, 496 (6th Cir.1989) (quoting *Lester v. City of Chicago*, 830 F.2d 706, 712 (7th Cir.1987)). Whether a police officer has used excessive force depends on whether the officer's conduct is "objectively reasonable" in light of the existing facts and circumstances. *See Graham v. Connor*, 490 U.S. 386, 397 (1989). Circumstances to be considered in this connection include the severity of the criminal conduct at issue, whether the suspect posed an immediate threat to the safety of the public and the officer, and whether the suspect was actively resisting arrest. *See id.* at 396. These factors must be considered from the perspective of a reasonable officer on the scene, who is often forced to make quick judgments under rapidly evolving and tense circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989).

In this case, Plaintiff was not arrested, but was briefly seized by the officer in an attempt to remove him from a volatile situation. Plaintiff just states that the nurses at the hospital called the police. Officer Lynn responded. He alleges while nurses were taking his wife down the hallway, Officer Lynn and two security guards pushed Plaintiff in the opposite direction to a door and locked it behind him. Plaintiff alleges very few facts with regard to this incident and does

-15-

not include allegations suggesting that the force applied was objectively unreasonable in light of the existing circumstances. He has not stated a claim for use of excessive force.

**IV.    Conclusion**

Accordingly, the Motions to Dismiss filed by Judges Leisy, Clark, and Rickett (ECF No. 7.) and the City of Barberton and Officer Lynn (ECF No. 13) are granted. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[1]

IT IS SO ORDERED.

Date: April 9, 2013                              */s/ John R. Adams*
                                                 JOHN R. ADAMS
                                                 UNITED STATES DISTRICT JUDGE

---

[1]   28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.